IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


WILLIAM YEAGER,

                    Plaintiff,

vs.                                    Case No. 18-4019-SAC-GEB

NATIONAL PUBLIC RADIO,
ANDREW FLANAGAN, JACOB
GANZ, and ASHLEY
MESSENGER,

                    Defendants.

**MEMORANDUM AND ORDER**

Plaintiff's <u>pro se</u> complaint (Doc. No. 1) lists five causes of action for defamation and slander at pp. 83-85. This case is before the court upon defendants' motion to dismiss. Doc. No. 12. The motion argues that the complaint fails to state a claim and that the court lacks personal jurisdiction over one defendant. As explained below, the court finds that the motion to dismiss should be granted because plaintiff has failed to state a claim.

Plaintiff and his wife (who is not a party in this case) take strong offense to and claim they have been damaged by the alleged defamatory statements discussed in this opinion. They consider the opinions published by defendants to be carelessly and unfairly formulated in contravention of the law and of the principles espoused by National Public Radio. Here, the court is concerned only with the law which does not give judges and juries the task

of deciding whether many types of opinions are true or false, even though those opinions may be unjustifiably hurtful to their subjects. The court finds for the reasons described below that the alleged defamatory statements are largely unverifiable opinions or opinions based (correctly or incorrectly) upon disclosed non-defamatory facts and, therefore, do not supply a plausible basis for cause of action.

## I. The parties

Plaintiff is 60 years old. Doc. No. 1, p. 74. According to the complaint, plaintiff has worked as an artist, filmmaker, musician, activist and humanitarian. Id. at pp. 10 & 67. He currently resides in Cottonwood Falls, Kansas. Id. at p. 28. Defendant National Public Radio (NPR) published an article about plaintiff on March 23, 2017 and broadcast an interview which concerned plaintiff on March 24, 2017. Defendant Andrew Flanagan wrote the article and he and defendant Jacob Ganz participated in the interview. Defendant Ashley Messenger is an attorney for NPR.

## II. Plaintiff's allegations in the complaint

Plaintiff, according to his lengthy complaint, has written and recorded over 2600 songs and pursued the business of music for 14 years between 1981 and 1995. Id. at p. 69. The complaint asserts that five songs from plaintiff's first album were finalists in a national song writing contest; that he was discovered by Columbia Records president Chuck Gregory in 1984 and by Grammy

Award winner Bruce Hornsby in 1990; that he was the guitar player for the "[i]nternationally recognized band 'Inner Circle' from 1985-1986;" and that his second album was played on all of South Florida's radio stations in 1985.  Id. at p. 70.

Plaintiff has produced films and music videos.  He claims he has five feature films listed on IMDb.  Id. at p. 23.  He won awards in the mid-1990s at the Palm Beach International Film Festival and the Dahlonega International Film Festival, and in later years at the Delray Beach International Film Festival (2004) and the Red Dirt International Film Festival (2015).  Id. at pp. 71-73.  Another film or performance art piece produced by plaintiff was "Jimmy's Story" in which plaintiff portrayed a supposed love-child of Jimi Hendrix.

Plaintiff states in the complaint that his desire to use his artistic talents to better humanity has been posted on his website for over 12 years.  Id. at p. 27.  His wife works with him in these endeavors.   The complaint contains multiple references to plaintiff's desire to raise money to supply wheelchairs for land mine victims through, as an example, benefit concerts.

Plaintiff asserts that he is not a public figure.  Id. at p. 28.

On March 23, 2017, an article by Andrew Flanagan was posted on the NPR website.  The article was titled "The Most Expensive Record Never Sold – Discogs, Billy Yeager and the $18,000 Hoax

That Almost Was."  The article begins:  "This is the story of a
hoax that almost was.  Its motivating force was a hunger for fame,
or infamy, or whispered legend in a particularly American sort of
way."  The article describes how a test pressing of plaintiff's
album titled "Billy Yeager 301 Jackson St." was auctioned for
$18,000.00 on a resale website – "Discogs" – which is popular with
record collectors.  This broke the record of $15,000.00 bid for a
rare Prince album.  Flanagan wrote that this record-breaking sale
"seems to have been a fiction woven by the record's creator" and
that the website canceled the transaction.  In other words,
according to Flanagan plaintiff appeared to bid $18,000.00 for his
own record.  This is what Flanagan referred to as the "hoax that
almost was."  The article includes the following statements:

> – – Billy Yeager . . . has pursued musical fame (or at
> least notoriety) for 37 years, by his own account.
> Despite a clear talent for guitar and a cosmically
> eccentric and dubiously effective knack for self-
> promotion, Yeager has been stymied repeatedly.

> – – The most eccentric – and ill-conceived – example of
> his promotional facility, bar none, came when Yeager
> spent two years planning and executing a hoax that would
> eventually convince a television station and a weekly
> paper to believe that he was Jimmy Story, the son of
> Jimi Hendrix, who was in possession of lost recordings
> from the psychedelic legend.  To pull off the scam,
> Yeager dyed his skin brown.

> – – [Bruce] Hornsby heard a demo tape of Yeager's, liked
> what he heard and connected Yeager with Capitol Records,
> who gave Yeager a shot.  It was the closest he would
> come to fame, but it cemented in Yeager's mind what he'd
> thought for some time:  that he was destined for, perhaps

4

owed, greatness.  The catalyst Hornsby provided would become a source of obsession.

– – Embittered, Yeager began to plan the Jimmy Story bamboozle.  After two years of preparation, Jimmy Story became a cover star.  Less than two years after that, Yeager had assembled, roughshod and chaotic, a documentary about his life, with the Jimmy Story hoax as its centrifugal force.

– – A tumble down the rabbit hole of Yeager's life is quixotic indeed – relentless failures and his ceaseless drive to reverse them form a closed loop that only occasionally reaches out into the real world.  Diving in, you realize quickly you are not in control here, like Alice chasing the rabbit.  Like a dog chasing a car.

– – [T]he release of <u>Jimmy's Story</u> . . . drew the attention of a Spanish woman named Anais, who traveled to Florida and became Yeager's wife . . . After the pair married they began producing films like <u>Jesus of Malibu</u> and <u>Sebastien Beach, One Fine Day</u>,[1] which attracted minor attention.  Eventually, Yeager began experimenting with the web and the infinite possibilities it offers, to those with ample time on their hands, for invention, obfuscation and, most importantly self-mythology.

– – For all his purported virtuosity and the ostensible existence of multiple recordings, his music is – besides grainy footage of Yeager shredding, tank-topped and beach-browned, in a backyard jam session – practically inaccessible in an age of ubiquitous access.

– – The trail of (quite arguably) collectible Yeager ephemera online forms another closed system of dubious worth, with Yeager at its center and pseudonymous retailers encircling him.

– – On Discogs, the user who attempted to sell "301 Jackson St." and nearly broke the site's record under the name "southflamusic" has several other Yeager records for sale, none priced less than $3,200. . . . Reached over email, "southflamusic" responded using the name "Al Sharpton," a pseudonym they said was meant to protect their business interests.  Asked how they

---

[1] The correct spelling of the title is "Sebastian Beach, One Fine Day."

acquired their copy of "301 Jackson St.," Sharpton responded: "I can't say." . . . Sharpton did not respond at press time when asked point-blank if they were in fact Billy Yeager.

- - The press contact Yeager lists on his site – Chris Von Weinberg, who is also listed as the writer, producer and director of a recent documentary about Yeager and who has no other film credits on IMDb – did not respond to a request for an interview. That's because Von Weinberg is Yeager, says John F. Stacey. "Chris Von Weinberg. That's Billy. As he's migrated onto the Internet he's created all these fake identities."

- - Everything about this tale points to Yeager having bought his own unknown record from himself, short of Yeager actually admitting it.

- - This is a man more interested in the chase than in the catching. The story of Billy Yeager is one of purposeless obfuscation. Yeager told Stacey he should be playing stadiums, not local bars.

- - Yeager, for all the belief he has in his promise and his failures expressing it, has repeatedly poured more of his creative energy into being a trickster-booster than he has an artist. If that art does indeed exist, we'll probably never hear it at a price we're willing to pay.

On March 24, 2017, Audie Cornish of NPR interviewed defendants Flanagan and Ganz regarding a few pieces of music news. During the interview she questioned them about Flanagan's "reporting" regarding Yeager and the sale of "Billy Yeager ephemera." Doc. No. 13-2, p. 21. Flanagan explained that his report started with an email from Discogs about the record for the most expensive album sold on the site. Flanagan referred to Yeager as "a complete unknown" who sold the album on Discogs to himself to "get this

6

strange type of publicity that he's been seeking his entire life."

Id. at p. 22.  Ganz stated:

> "This guy, as good as he might possibly be, is far more
> interested in infamy than he is in fame and the chase of
> pulling the wool over people's eyes.  He's a huckster.
> He's a charlatan.  The fact that you can do that on the
> Internet as well as you can anywhere else is just sort
> of like part of the long story of people in the music
> industry doing crazy things I think."

Id.

Plaintiff alleges that he communicated several times with Ashley Messenger, seeking without success for defendants to issue a retraction and to have the article and interview removed from NPR's website.

The complaint alleges five counts of defamation or slander arising from the original publication or broadcast of the above-described article and interview or from the republication or rebroadcast on social media or other platforms.

## III. Rule 12(b)(6) standards

Defendants seek dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim.  To determine whether the complaint fails to state a claim pursuant to this rule, the court must decide whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court accepts the plaintiff's well-pled factual allegations as true and

views them in the light most favorable to the plaintiff. United States v. Smith, 561 F.3d 1090, 1098 (10th Cir. 2009). The court may also consider the exhibits attached to the complaint or referenced in the complaint. Id. The court, however, is not required to accept legal conclusions alleged in the complaint as true. Iqbal, 556 U.S. at 678. Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice" to state a claim. Twombly, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).

IV. Pro se standards

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A pro se litigant, however, is not relieved from following the same rules of procedure as any other litigant. See Green v.

<u>Dorrell</u>, 969 F.2d 915, 917 (10th Cir. 1992). A district court should not "assume the role of advocate for the <u>pro se</u> litigant." <u>Hall</u>, <u>supra</u>. Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint." <u>Whitney v. State of New Mexico</u>, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

V. <u>Defamation standards</u>

Kansas law and federal constitutional law apply here. Plaintiff alleges defamation and slander.[2] In Kansas, the tort of defamation includes both libel and slander. <u>Dominguez v. Davidson</u>, 974 P.2d 112, 117 (Kan. 1999)(quoting <u>Lindemuth v. Goodyear Tire & Rubber Co.</u>, 864 P.2d 744, 750 (Kan.App. 1993)). A valid defamation claim requires proof of: (1) false and defamatory statements; (2) the defendant communicated these statements to a third party; and (3) the plaintiff's reputation was injured by the statements. <u>El-Ghori v. Grimes</u>, 23 F.Supp.2d 1259, 1269 (D.Kan. 1998); see also <u>In re Rockhill Pain Specialists, P.A.</u>, 412 P.3d

---

[2] Plaintiff mentions "false light" invasion of privacy at p. 21 of the complaint. Plaintiff relies upon the same facts and arguments to support this claim as the facts and arguments raised to support his defamation claim. The reasons given in this order for holding that plaintiff has failed to state a claim for defamation apply to dismiss plaintiff's "false light" claim. See <u>Rinsley v. Brandt</u>, 700 F.2d 1304, 1307 (10th Cir. 1983)(applying same defenses to both causes of action); <u>Stead v. U.S.D. No. 259</u>, 92 F.Supp.3d 1088, 1109 (D.Kan. 2015)(the two claims are generally treated the same way); <u>Castleberry v. Boeing Co.</u>, 880 F.Supp. 1435, 1442 (D.Kan. 1995)(courts treat the two claims similarly); Restatement (Second) of Torts § 652E (1977)(comment e)(it is arguable that limitations placed on defamation should apply to false light claims).

1008, 1024 (Kan.App. 2017)(quoting <u>Hall v. Kansas Farm Bureau</u>, 50 P.3d 495 (Kan. 2002)).

Subjective statements and statements of opinion are protected by the First Amendment as long as they do not present or imply the existence of defamatory facts which are capable of being proven true or false. <u>Milkovich v. Lorain Journal Co.</u>, 497 U.S. 1, 18-19 (1990); <u>Pan Am Systems Inc. v. Atlantic Northeast Rails and Ports, Inc.</u>, 804 F.3d 59, 65 (1st Cir. 2015). This is a question to be determined by the court. <u>Robinson v. Wichita State University</u>, 2017 WL 2378332 *4 (D.Kan. 5/31/2017); <u>D'Souza-Klamath v. Cloud Cty. Health Ctr., Inc.</u>, 2009 WL 902377 *10 (D.Kan. 3/31/2009).

Vague language that is subject to multiple interpretations is generally not actionable. See <u>Montgomery v. Risen</u>, 875 F.3d 709, 713 (D.C. 2017)(characterization of software sold to the government as a "hoax" is too "loose, figurative or hyperbolic" to be considered defamatory); <u>Hogan v. Winder</u>, 762 F.3d 1096, 1107(10th Cir. 2014)("performance issues" & "erratic behavior" – too vague and nonspecific to be defamatory); <u>Gray v. St. Martin's Press, Inc.</u>, 221 F.3d 243, 249 (1st Cir. 2000)(what is success or failure in the situation of a public communications firm is very much a matter of opinion); <u>Phantom Touring, Inc. v. Affiliated Publi'ns</u>, 953 F.2d 724, 728 (1st Cir. 1992)(description of a musical comedy version of "Phantom" as "a rip-off, a fraud, a scandal, a

snake-oil job" is too subjective to be proven true or false, even the charge of "blatantly misleading the public" is subjective and imprecise); <u>Levinsky's, Inc. v. Wal-Mart Stores, Inc.</u>, 127 F.3d 122, 129-30 (1st Cir. 1997)("trashy" is subjective and cannot be verified); <u>McCabe v. Rattiner</u>, 814 F.2d 839, 842 (1st Cir. 1987)(the word "scam," used in an article regarding a timeshare sales program, is incapable of being proven true or false); <u>Robinson v. Wichita State University</u>, 2018 WL 836294 *12 (D.Kan. 2/13/2018)("too bureaucratic" is subjective and nondefamatory); <u>Ayyadurai v. Floor64, Inc.</u>, 270 F.Supp.3d 343, 361-62 (D.Mass. 2017)("charlatan" used in a loose figurative manner cannot be defamatory); <u>Robinson</u>, 2017 WL 2378332 at *4 ("too hierarchal" and "too punishment-centered" are subjective and nondefamatory); D.Kan. 5/31/2017); <u>Clark v. Time Inc.</u>, 242 F.Supp.3d 1194, 1219 (D.Kan. 2017)("disturbing" management style is subjective and nondefamatory); <u>McKee v. Cosby</u>, 236 F.Supp.3d 427, 445 (D.Mass.) <u>aff'd</u>, 874 F.3d 54 (1st Cir. 2017)("The judgment of an individual's credibility is not an objective fact capable of being proven true or false"); <u>Paterson v. Little, Brown & Co.</u>, 502 F.Supp.2d 1124, 1135 (W.D.Wash. 2007)("ripoff" is imprecise and incapable of defamatory meaning); <u>Metcalf v. KFOR-TV, Inc.</u>, 828 F.Supp. 1515, 1530 (W.D.Okla. 1992)(statement that a medical organization was a "sham" perpetrated by "greedy doctors" is a matter of opinion); <u>NBC Subsidiary (KCNC-TV), Inc. v. Living Will Center</u>, 879 P.2d 6,

11 (Colo. 1994)(en banc)(statement that a product is a "scam" as a statement of its value is not a defamatory statement).

Defamation cannot arise where the speaker communicates the nondefamatory facts that undergird his opinion. Piccone vs. Bartels, 785 F.3d 766, 771 (1st Cir. 2015); Ross v. Rothstein, 2014 WL 1385128 *8 (D.Kan. 4/9/2014). Even if an expression of opinion may have been skewed by a vindictive motive, if it is "'based on disclosed or assumed nondefamatory facts [then it] is not itself sufficient for an action of defamation, no matter how unjustified or unreasonable the opinion may be or how derogatory it is.'" Piccone, 785 F.3d at 774 (quoting Yohe v. Nugent, 321 F.3d 35, 42 (1st Cir. 2003))). "[E]ven a provably false statement is not actionable if it is plain the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." Riley v. Harr, 292 F.3d 282, 289 (1st Cir. 2002)(interior quotation omitted). If defendants fully disclosed the facts supporting an opinion and if those facts are not false and defamatory, then neither the opinion nor the statement of facts is defamatory because it is a pure opinion. Piccone, 785 F.3d at 771-72; Restatement (Second) of Torts § 566 (1977).

If the subject of an alleged defamatory statement is a matter of public concern, then the First Amendment requires that the alleged defamatory statement be published with actual malice.

<u>Brokers' Choice of America, Inc. v. NBC Universal, Inc.</u>, 861 F.3d
1081, 1109 (10th Cir. 2017). "[P]ublic concern is something that
is a subject of legitimate news interest; that is, a subject of
general interest and of value and concern to the public at the
time of publication." <u>City of San Diego v. Roe</u>, 543 U.S. 77, 83-
84 (2004). Actual malice must also be proven for a public figure
to recover damages for defamation. <u>Mink v. Knox</u>, 613 F.3d 995,
1004 (10th Cir. 2010). Public figures can be "general-purpose
public figure[s]" — people of "such pervasive fame or notoriety"
that they are public figures "for all purposes and in all contexts"
— or "limited-purpose public figure[s]" — people who voluntarily
enter or are "drawn into a particular public controversy" and
thereby become public figures "for a limited range of issues"
defined by their "participation in the particular controversy
giving rise to the defamation." <u>Gertz v. Robert Welch, Inc.</u>, 418
U.S. 323, 351-52 (1974). This is a question of law. <u>Ruebke v.
Globe Communications Corp.</u>, 738 P.2d 1246, 1251 (Kan. 1987).

"Actual malice" is "knowledge that [the statement] was false
or with reckless disregard of whether it was false or not." <u>New
York Times Co. v. Sullivan</u>, 376 U.S. 254, 279-80 (1964). "The
mere failure to investigate cannot establish reckless disregard
for the truth." <u>Gertz</u>, 418 U.S. at 332. "Rather, there must be
'sufficient evidence to permit the conclusion that the defendant
<u>in fact</u> entertained serious doubts as to the truth of his

publication.'" Revell v. Hoffman, 309 F.3d 1228, 1233 (10th Cir.
2002)(quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)).
This is a subjective inquiry – "'there must be sufficient evidence
to permit the conclusion that the defendant had a high degree of
awareness of . . . probable falsity.'" Id. (quoting Harte-Hanks
Communications, Inc. v. Connaughton, 491 U.S. 657, 688
(1989)(interior quotation marks omitted)). "Reckless disregard
'is not measured by whether a reasonably prudent man would have
published, or would have investigated before publishing.'" Id.
(quoting St. Amant, 390 U.S. at 731).

VI. <u>The alleged false and defamatory statements do not plausibly
support a claim for defamation or slander.</u>

The complaint does not present a crystal clear list of the
statements which plaintiff alleges are defamatory. Defendants
have compiled a list in an appendix to the motion to dismiss (Doc.
No. 13-1) which plaintiff in his response brief has not disputed
or claimed to be incomplete. But, it appears to the court that
the list does not mention statements plaintiff alleges are
defamatory in ¶¶ 151, 154 and 156 of the complaint. Defendants,
however, have broadly alleged reasons to find that plaintiff has
failed to state a defamation claim and defendants assert that these
reasons apply, in whole or in part, to plaintiff's entire
complaint. Doc. No. 14, pp. 15-17. As explained below, the court
agrees that least some of those reasons apply to all of the

14

statements plaintiff alleges to be defamatory, even those statements which are not listed in the appendix to defendants' motion to dismiss.

The court relies upon some of the legal principles and cases cited in the previous section of this order in the rulings made here. The court finds that the article and the interview described in the complaint involve a matter of public concern and that plaintiff's part in the story makes him in a limited-purpose public figure. See <u>Ruebke</u>, 738 P.2d at 1251 (an individual who voluntarily injects himself or is drawn into a particular public controversy may become a public figure for a limited range of issues). The court reaches this conclusion for the following reasons. Plaintiff's album's sale on Discogs for $18,000 broke by $3,000 the mark set by a Prince album for most money paid for an album on Discogs. Prince is a world-famous musician of course, who died approximately eleven months before the publication of the article and the interview at issue in this case. Discogs publicized the sale with an email received by defendants Flanagan and Ganz, who considered it sufficiently newsworthy to investigate and compose an article for a major national news source.

A. "<u>He's a huckster. He's a charlatan.</u>"

In ¶ 141 of the complaint, plaintiff alleges this statement by defendant Ganz during the broadcast of "All Things Considered" was slander. The facts plaintiff asserts do not plausibly support

this claim. Defendants contend, and the court agrees, that this comment constitutes an opinion based on disclosed facts and therefore is not defamatory. During the interview, Ganz and Flanagan describe their investigation of the largest amount bid for an album on Discogs and how it "seemed" that plaintiff bid the record-breaking sum on his own album. Ganz concluded that this was a use of the Internet by plaintiff to gain attention and "part of the long story of people in the music industry doing crazy things." Doc. No. 13-2, p. 22. This supplies the factual basis for the opinion that plaintiff was a "huckster" or a "charlatan." The alleged fact that plaintiff bid on his own album on Discogs is not defamatory, even if it is false.[3] Therefore, the statement is not defamatory because it is an opinion drawn from an alleged non-defamatory fact.

In addition, the terms "huckster" and "charlatan" are vague and subject to multiple interpretations. Ayyadurai, 270 F.Supp.3d at 361-62 (so finding in regards to "charlatan"). They could be terms, for example, for a salesperson, a puffer, a politician or a performance artist. Therefore, they are not capable of being proved to be true or false.

---

[3] Plaintiff also has not alleged facts which would plausibly demonstrate actual malice by defendants in concluding that plaintiff bid on his own album.

B. "This is the story of a hoax that almost was. Its motivating force was a hunger for fame or infamy."

In ¶ 143 of the complaint, plaintiff alleges that this statement in defendant Flanagan's article was defamatory. Plaintiff's alleged facts do not plausibly support this charge. The statement is an expression of opinion based upon facts disclosed in the article. Moreover, the description of plaintiff's motivation is not verifiable. Ayyadurai, 270 F.Supp.3d at 365 (a number of courts have recognized that a person's motivations can never been known for sure); Murray v. Huffington Post.com, Inc., 21 F.Supp.3d 879, 886 (S.D.Ohio 2014)(suggestion of improper motive is not verifiable because there are no objective tests to determine internal motivation). Plaintiff takes particular offense toward comments suggesting he has sought fame and offers testimony in support of his artistic and humanitarian impulses. The court will not dispute the considerable evidence plaintiff has mustered in support of his character and abilities. But, this is not an issue for litigation here. The court sides with the view in other defamation cases that statements concerning plaintiff's "motivation or intent are not actionable because they are incapable of being proved true or false." Ayyadurai, 270 F.Supp.3d at 365.

C. "Billy Yeager, a Florida man who has pursued musical fame (or at least notoriety) for 37 years, by his own account"

In ¶¶ 144 and 145 plaintiff asserts that this statement is false and defamatory in two respects. First, plaintiff contends

that it is defamatory to state that he pursued fame and notoriety. Second, plaintiff claims that it is defamatory to say that plaintiff has engaged in that pursuit for 37 years because it makes plaintiff appear pathetic. Plaintiff does not argue that he has been involved in the business of music and filmmaking for 37 years. He argues that he has never pursued notoriety or fame. This contention, however, returns the court to the question of plaintiff's motivation which is not an actionable claim. In addition, fame and notoriety have vague meanings which include being generally known or talked of. It is impossible to base a defamation claim upon such vague language.

D. "<u>Yeager has been stymied repeatedly</u>."

In ¶ 146 plaintiff asserts that this statement from defendant Flanagan's article is false and defamatory and, as rebuttal, cites many accomplishments in his music and film careers. This statement is a subjective opinion based on disclosed facts. In his article, Flanagan describes the "Jimmy Story" project, the canceled sale of the "301 Jackson St." album, Yeager's contract with Capitol Records, and the "minor attention" given to Yeager's films to support this opinion.[4] Therefore, plaintiff has not stated a claim for defamation in ¶ 146. In addition, "success" is a vague term which can be defined by any number of criteria. <u>Gray</u>, 221 F.3d at

---

[4] Again, plaintiff does not allege facts plausibly demonstrating actual malice by defendants in reciting the "disclosed facts" to support defendants' opinions.

248. Plaintiff's argument appears to be that it was defamatory for Flanagan to state that he has been "stymied" or unsuccessful. This, however, cannot be proven as true or false.

   E.  "Yeager spent two years planning and executing a hoax."

   Plaintiff asserts in ¶ 147 that this statement is false and defamatory because the "Jimmy Story" effort was not a hoax; rather it was performance art and artistic protest.  The use of the term "hoax" is a subjective opinion supported by disclosed facts.[5]  It is also a vague term which cannot be proven true or false in a defamation trial.  Montgomery, 875 F.3d at 713.  Therefore, ¶ 147 does not assert a plausible claim of defamation.

   F.  "Embittered, Yeager began to plan the Jimmy Story bamboozle."

   In ¶ 9 of the complaint, plaintiff lists this statement, among others, as defamatory.  Like the statements discussed in subsections VI(B) and VI(E), this statement is a subjective opinion supported by disclosed facts.  It also makes assertions regarding emotion or motivation which cannot be verified.  Finally, it uses a vague term ("bamboozle") which also cannot be verified as true or false.  Therefore, the statement does not provide plausible grounds for a defamation claim.

---

[5] This applies as well to the use of the term "hoax" in the alleged defamatory statement discussed in subsection VI(B).

G. "To pull off his scam."[6]

Plaintiff alleges in ¶ 148 of the complaint that this statement was false and defamatory. Plaintiff's arguments are basically the same as those discussed in subsection VI(E). Plaintiff denies that he swindled anyone and claims that this alleged defamatory statement says otherwise. The context of the statement is a discussion of the "Jimmy Story" project. The article does not allege people were cheated out of money or possessions. But it quotes a Miami Herald article describing the "Jimmy Story" effort as:

> "an incredibly detailed hoax - - including forged photos, signatures and birth certificate - - that was two years in the making by itinerant surfer/musician Billy Yeager. He then called The Herald to claim, er, credit for the hoax, executed for attention."

The court concludes for the reasons given in relation to ¶ 147, that the term "scam" was used as a subjective characterization supported by disclosed nondefamatory facts. Moreover, "scam" is a vague and imprecise term which cannot be proven as true or false. McCabe, 814 F.2d at 842. Therefore, plaintiff has failed to state a claim as to the statement alleged in ¶ 148.

---

[6] The actual statement in the article appears to be "To pull off the scam, Yeager died his skin brown." Doc. No. 13-2, p. 6.

H. "[N]ote that many – to most of the clippings included in that image, such as the story from 'New York Times' are clearly fake."

In ¶ 149, plaintiff alleges that this statement is false and defamatory. The statement apparently refers to an image of a collage of articles which once appeared on plaintiff's website. See Doc. No. 13-2, p. 33. In the center of the image are pictures of front-pages of several major metropolitan American newspapers and a few foreign newspapers. These pictures do not appear to show articles about plaintiff. The outer portion of the collage contains pictures of articles regarding plaintiff from other newspapers or periodicals.

Plaintiff does not provide a plausible basis to claim that the statement in ¶ 149 constitutes defamation for the following reasons. First, the statement is an opinion based upon a disclosed non-defamatory fact. Second, plaintiff has not alleged facts plausibly demonstrating that the statement was made with actual malice. Finally, whether in fact the "fake clippings" constitute "many" or "most" of the clippings in the collage is not material to whether the statement is defamatory. Brokers' Choice of America, 861 F.3d at 1107 ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge is justified.").

I. "Hornsby heard a demo tape of Yeager's, liked what he heard and connected Yeager with Capitol Records, who gave Yeager a shot. It was the closest he would come to fame, but it cemented in Yeager's mind what he'd thought for some time: that he was destined for, perhaps owed, greatness."

In ¶ 150 of the complaint, plaintiff asserts that the underlined portion of this statement from the Flanagan article is false and defamatory. Plaintiff asserts that he "has always despised fame unless it is used for raising awareness for humanitarian reasons." Doc. No. 1, pp. 75-6. Plaintiff contends he has been guided to choose a path other than fame and that he has always known that his purpose was to help his fellow man. Id. Again, while the court does not dispute plaintiff's description of his motivation, the statement referred to in ¶ 150 is a non-verifiable commentary regarding plaintiff's incentive or purpose. As such, it does not provide a plausible basis for a defamation claim.

J. "The catalyst Hornsby provided would become a source of obsession."

In ¶ 151 of the complaint, plaintiff alleges that this statement was false and defamatory. Plaintiff claims that he was inspired by and extremely grateful to Hornsby, but that plaintiff was not obsessed "with anything other than using his talents to help those who cannot help themselves, raising conscious awareness, becoming truth, and standing on the pillar of truth blasting a trumpet that calls all people to repent of their

vanities and stupidities . . ."  Id. at pp. 76-77.  Inspiration

and obsession are both related to motivation.  Whether plaintiff

was inspired or obsessed with Hornsby's favorable interaction is

not verifiable and cannot be grounds for a defamation claim as

previously discussed.

K. "A tumble down the rabbit hole of Yeager's life is quixotic
indeed – relentless failures and his ceaseless drive to reverse
them form a closed loop that only occasionally reaches out into
the real world."

In ¶ 153 of the complaint, plaintiff asserts that this

statement in the Flanagan article is false and defamatory because

he has not suffered relentless failures.  Plaintiff asserts that

the claim has been proven false, apparently referring to his

rebuttal of the claim that he has been "stymied repeatedly."  This

commentary by Flanagan is not plausibly defamatory for the reasons

given in relation to the remark that plaintiff has been "stymied

repeatedly."  The question of success or failure may always be

legitimately debated, particularly in the field of art or music.

The opinion stated by Flanagan cannot be verified as wrong and

even if it were considered wrong, it is not defamatory because it

is based on disclosed nondefamatory facts.

L. "But the release of 'Jimmy's Story,' which Stacey praised, drew the attention of a Spanish woman named Anais, who traveled to Florida and became Yeager's wife."[7]

In ¶ 154 of the complaint, plaintiff asserts that this statement is false and defamatory. "A statement is defamatory if it diminishes the esteem, respect, goodwill or confidence in which the plaintiff is held or excites adverse, derogatory or unpleasant feelings or opinions against him. A defamatory statement necessarily involves the idea of disgrace." Clark, 242 F.Supp.3d at 1217 (interior quotations omitted). There is no derogatory meaning conveyed in the statement described in ¶ 154. Therefore, it does not provide plausible grounds for a defamation claim.

M. "For all his purported virtuosity and the ostensible existence of multiple recordings, his music is – besides grainy footage of Yeager shredding, tank-topped and beach browned, in a backyard jam session – practically inaccessible in an age of ubiquitous access."

Plaintiff asserts in ¶ 156 that this statement is false and defamatory because there are eight other videos that feature plaintiff's music. Plaintiff does not allege facts plausibly showing that this statement was made with actual malice. Moreover, the term "practically inaccessible" is vague and unverifiable. "Practically" indicates exceptions exist to the observation that plaintiff's music is "inaccessible" and provides grounds to find that the statement is not defamatory. See Robinson, 2018 WL 836294

---

[7] "Stacey" is John F. Stacey who Flanagan describes as the author of an "excellent piece" in the New Times Broward-Palm Beach regarding the production of "Jimmy's Story."

at *18 (finding terms "too bureaucratic" and "too hierarchal" to be unverifiable and nondefamatory). Also, the statement is not derogatory. For all of these reasons, plaintiff may not base a defamation claim upon the statement highlighted in ¶ 156.

N. "The story of Billy Yeager is one of purposeless obfuscation."

In ¶ 157, plaintiff asserts that this statement is false and defamatory because it suggests that plaintiff has no purpose other to obfuscate and that his art strives to make things unclear or unintelligible. This statement is clearly a subjective opinion based upon disclosed facts drawn from events in plaintiff's career which are described in Flanagan's article. Plaintiff does not allege facts plausibly showing that the disclosed facts were stated with actual malice or are defamatory. Therefore, the statement in ¶ 157 does not plausibly support a defamation claim.

O. "Yeager, for all the belief he has in his promise and his failures expressing it, has repeatedly poured more of his creative energy into being a trickster-booster than he has an artist."

In ¶ 158, plaintiff contends that this statement is false and defamatory. This is the next-to-last sentence in the Flanagan article. The final sentence is: "If that art does indeed exist, we'll probably never hear it at a price we're willing to pay." The statement to which plaintiff objects is another expression of opinion based upon a review of events or projects in plaintiff's career. Flanagan concluded from his review that plaintiff employed

subterfuge to advance his career.  This opinion is not plausibly
defamatory because it is based upon nondefamatory facts disclosed
in the article and there has been no plausible showing of actual
malice.

P.  "Eventually, Yeager began experimenting with the web and
the infinite possibilities it offers, to those with ample time on
their hands, for invention, obfuscation, and most important, self-
mythology."

In ¶ 165, plaintiff alleges this statement is defamatory.
But, this is another example of a subjective opinion which is based
on disclosed facts.  Therefore, it does not support a claim of
defamation.  Plaintiff further asserts that the statement suggests
that plaintiff doesn't produce meaningful films or music videos
where the contrary is the case.  A defamation claim, however, is
not supported by what is omitted from a publication.  "The omission
of additional favorable information from an otherwise true
publication does not render a statement materially false."
Broker's Choice of America, Inc., 861 F.3d at 1108; see also,
Martin v. Hearst Corp., 777 F.3d 546, 553 (2d Cir. 2015); Janklow
v. Newsweek, Inc., 759 F.2d 644, 648 (8th Cir. 1985).

Finally, plaintiff contends that the statement implies that
plaintiff is lazy because he must have "ample time" on his hands
or just sits in a "cramped apartment."  The "cramped apartment"
phrase is drawn from a quotation used in the Flanagan article where
it is stated:  "As the [Miami] Herald wrote, years after Hornsby's

co-sign, Yeager was far from success, surviving 'on odd jobs,' living 'in a cramped beach apartment with surfboards on the walls' with 'a drawer jammed with hundreds of terse rejection letters from recording companies.'" Doc. No. 13-2, p. 7. Plaintiff does not claim that the Miami Herald was quoted out of context. Moreover, the statements to which he refers in ¶ 165 are vague, cannot be proven false, and are not derogatory. Accordingly, the statements that plaintiff had "ample time" on his hands or sat in a "cramped apartment" do not plausibly support a defamation claim.

VII. Independent grounds exist to dismiss defendant Messenger.

Defendant Ashley Messenger is legal counsel for NPR. The complaint alleges that plaintiff engaged in at least three months of correspondence with Messenger, insisting that the Flanagan article and the interview were defamatory and inaccurate, and that they be taken down, removed or retracted. Messenger did not take down, remove or retract the article or interview, although she did offer on behalf of NPR to consider publishing a response (up to 1500 words) from plaintiff. Plaintiff did not accept this offer.

The complaint does not allege that Messenger made or communicated a defamatory statement. Instead, it alleges that Messenger refused to remove the alleged defamatory material from the NPR website or other platforms and refused to retract the

statements.[8]  The court believes Kansas law would follow the holding of other courts that it is not defamation to refuse to retract a statement or to refuse to remove an alleged defamatory statement from a website.  See <u>Clark v. Viacom Intern. Inc.</u>, 617 Fed.Appx. 495, 506-07 (6th Cir. 2015)(a statement is not republished by keeping it continuously available on a website); <u>Roberts v. McAfee, Inc.</u>, 660 F.3d 1156, 1167-68 (9th Cir. 2011)(failing to take down a press release does not amount to republication); <u>McFarlane v. Sheridan Square Press, Inc.</u>, 91 F.3d 1501, 1515 (D.C.Cir. 1996)(finding no authority that liability for defamation may stem from failure to retract a statement); <u>D.A.R.E. America v. Rolling Stone Magazine</u>, 101 F.Supp.2d 1270, 1287 (C.D.Cal. 2000)(same).

---

[8] The motion to dismiss contends that this court lacks personal jurisdiction over Messenger, who does not live or work in Kansas.  Plaintiff, however, alleges without dispute that Messenger did not take down, remove or retract the alleged defamatory material after a series of communications between the two over a three-month period.  The court disagrees with plaintiff that his allegations are sufficient to state a claim.  But, plaintiff makes a barely sufficient prima facie showing that Messenger purposefully directed allegedly wrongful actions at plaintiff in Kansas where plaintiff's career was being conducted in part and was allegedly damaged.  This can be considered adequate grounds for the exercise of personal jurisdiction over Messenger in this court.  See <u>Calder v. Jones</u>, 465 U.S. 783 (1984); cf., <u>Shrader v. Biddinger</u>, 633 F.3d 1235, 1240-42 (10th Cir. 2011)(no personal jurisdiction over operator of online internet forum which allegedly defamed author living in Oklahoma where author's work was not connected to Oklahoma and the forum did not target an Oklahoma audience); <u>Dudnikov v. Chalk & Vermilion Fine Arts, Inc.</u>, 514 F.3d 1063, 1072-73 (10th Cir. 2008)(finding personal jurisdiction over non-resident copyright holder who allegedly sent erroneous copyright claim to internet auction site with knowledge that it would damage plaintiff's business).

VIII. <u>Conclusion</u>

The court shall grant plaintiff 21 days from the date of this order to file an amended complaint which states a claim upon which relief may be granted.  If plaintiff does not do so, the court shall dismiss this case with prejudice for the reasons described in this order.

**IT IS SO ORDERED.**

Dated this 31st day of July, 2018, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge